OPINION
Sarah L. Arline was injured in an automobile collision on February 23, 1995. On September 22, 1997, a copy of a First Report of an Injury, Occupational Disease or Death she had provided to her employer on January 24, 1997 was filed with the Ohio Bureau of Workers' Compensation ("BWC"). She sought workers' compensation benefits for her injuries, but the BWC issued an order denying benefits because her application had not been filed within two years of the injury. A district hearing officer for the Industrial Commission of Ohio ("commission") affirmed the decision of the BWC. A staff hearing officer for the commission agreed, and further review has been denied by the commission.
Dr. Arline by then had retained legal counsel, who filed a direct appeal to the Franklin County Court of Common Pleas. A judge of that court granted summary judgment, again finding that Dr. Arline had failed to meet the requirement of R.C. 4123.84(A) concerning time of filing.
Counsel for Dr. Arline has now pursued a further direct appeal to this court, assigning a single error for our consideration:
 The Trial Court erred in granting Defendant's Motion for Summary Judgment on the basis that Plaintiff's claim was time barred.
Dr. Arline was employed by LifeCare Alliance when she was injured. LifeCare Alliance is a state-fund employer, as opposed to a self-insuring employer, for purposes of workers' compensation matters. This fact was apparently unknown to her.
R.C. 4123.84 states, in pertinent part:
 (A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death:
 (1) Written notice of the specific part or parts of the body claimed to have been injured has been made to the industrial commission or the bureau of workers' compensation;
 (2) The employer, with knowledge of a claimed compensable injury or occupational disease, has paid wages in lieu of compensation for total disability;
 (3) In the event the employer is a self-insuring employer, one of the following has occurred:
 (a) Written notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau or the employer has furnished treatment by a licensed physician in the employ of an employer, provided, however, that the furnishing of such treatment shall not constitute a recognition of a claim as compensable, but shall do no more than satisfy the requirements of this section;
 (b) Compensation or benefits have been paid or furnished equal to or greater than is provided for in sections 4123.52, 4123.55 to 4123.62, and 4123.64 to 4123.67 of the Revised Code.
 (4) Written notice of death has been given to the commission or bureau.
 (B) The bureau shall provide printed notices quoting in full division (A) of this section, and every self-insuring employer who shall post and maintain at all times one or more of the notices in conspicuous places in the workshop or places of employment.
If the words of R.C. 4123.84(A) are taken at face value, within two years of her injury Dr. Arline had to provide notice to the BWC, had to provide notice to the commission, or had to receive wages in lieu of compensation if she were to avoid being forever barred from workers' compensation benefits for her injuries. Dr. Arline provided an affidavit in the trial court, which read:
 Now comes Sarah Arline and after being first duly cautioned and sworn, states the following:
 1. At all times material hereto, I have been a physician who is licensed to practice medicine in the State of Ohio.
 2. I have been employed for the past eleven years at LifeCare Alliance including at the time of the accident in question in 1995, as well as at the time I filed the claim with the personnel office at LifeCare.
 3. I had always taken all insurance questions to the LifeCare Alliance personnel office and did the same thing with the Workers' Compensation papers on the claim which is the subject of this court case.
 4. It was always my understanding that LifeCare alliance was self-insured which is why I turned all my forms in to the personnel office like all other insurance forms and incident reports.
 5. The BWC form indicated to give the form to your self-insuring employer.
The forms utilized by the BWC for initial reports about work-related injury and disease tell the injured worker to "complete as much of this form as possible" and to "[t]ear off this sheet and return completed form to your local BWC Customer Service Office." The forms then include on the first page a section describing treatment received and a section to be completed by the employer. The employer section provides a space for the employer to certify or reject the claim, with an explanation. Dr. Arline also provided the trial court with copies of the forms she ultimately filed with the BWC.
Dr. Arline alleges in the forms ultimately filed that she notified LifeCare Alliance of her injuries originally in 1995. The forms demonstrate that she provided the forms (as required) to her employer on January 24, 1997, but that the employer did not complete the employer's portion of the forms until September 3, 1997. Thus, if the employer had promptly completed the forms and forwarded them to the BWC, the forms would have been received within the two-year time allowed. Instead, the employer or its representative waited over seven months to process the forms and then indicated that it was rejecting the claim "due to the time of injury after working hours, untimely notification of injury and no medical evidence provided." The forms filed to apply for benefits indicate that the collision was reported to LifeCare Alliance on the day after the collision, that the time of the collision was 5:25 p.m. and that Dr. Arline indicated she was suffering from injuries to her neck and head and from left side numbness. This information was already on the forms when LifeCare Alliance received them.
Under the circumstances, a trier of fact could infer that LifeCare Alliance was painfully slow in processing the forms or deliberately delayed processing the forms until after the two-year limit had passed.
R.C. 4123.84 does not include a requirement that state-fund employers be provided copies of the paperwork before a workers' compensation claim case can be processed. However, as a practical matter, the BWC has installed such submission to employers as a requirement through the language the BWC has utilized in its forms. In addition to directing injured workers to complete as much of the forms as possible and to return the "completed" forms to the BWC, the BWC warns the injured worker that processing of their claims will be delayed if they send the paperwork directly to the BWC when their employer happens to be a self-insuring employer.
The average citizen of Ohio has no clue about the difference between self-insuring and state-fund employers. Indeed, most lawyers do not understand the difference. Injured workers should not be penalized for their lack of knowledge in this regard.
In workers' compensation matters, we are consistently bound by the mandate of R.C. 4123.95. The statute reads:
 Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees.
This statutory mandate is in accord with the purpose of workers' compensation. Workers' compensation is intended to be a simple, efficient system of assuring that people who are injured on the job are fairly compensated and receive the medical treatment they need. Workers' compensation was not created to maximize business profits or to provide political benefit to those who administer the system.
Since the BWC has installed as a practical matter a requirement that the First Report of Injury, Occupational Disease or Death forms be submitted to employers, whether state-fund or self-insuring, before the form is to be processed by the BWC, we find that employers are deemed as agents of the BWC for purposes of R.C. 4123.84. When an injured worker provides the form to the employer before the expiration of the two-year limit, the form is deemed to have been provided to the BWC for purposes of R.C.4123.84.
We note that Ohio Adm. Code 4123-3-03(A) already requires employers to "* * * keep a record of all injuries and occupational diseases resulting in seven days or more of total disability or death and * * * report them to the bureau of workers' compensation within one week of acquiring knowledge of such injury or death and within one week after acquiring knowledge of * * * the occupational disease * * *."
This provision of the Ohio Administrative Code tracks the language of R.C. 4123.28. However, R.C. 4123.28 continues by stating:
 Each day that an employer fails to file a report required by this section constitutes an additional day within the time period given to a claimant by the applicable statute of limitations for the filing of a claim based on the injury or occupational disease, provided that a failure to file a report shall not extend the applicable statute of limitations for more than two additional years.
Thus, for workers who claim seven or more days of disability, R.C. 4123.28 has the effect of causing notice to the BWC to occur promptly from the employer or an extension of time to file to occur automatically. We believe a similar extension should apply to injured workers who have continued to work despite their injuries.
The legitimate purpose of R.C. 4123.84 is to provide prompt notice to the BWC of claims and potential claims from injured workers. The purpose of R.C. 4123.84 is not to arbitrarily present a bar to receipt of benefits for workers who are injured on the job. The purpose of R.C. 4123.84 is definitely not to reward employers who delay processing and forwarding the paperwork which the BWC requires. We believe our interpretation of R.C. 4123.84 does not thwart the legitimate purposes of the statute while at the same time avoiding rewards for those who do or could thwart the legitimate purposes of the statute by slowing the processing of the First Report of an Injury, Occupational Disease or Death.
If the BWC foresees significant problems resulting from the employers being deemed agents of the BWC for purposes of R.C.4123.84, various solutions are possible. Time requirements for processing of the paperwork by employers could be created where they do not already exist and the time limits for employers could be enforced.
A second option is to modify the First Report of an Injury, Occupational Disease or Death Form so the injured worker is not responsible for providing the original copy of the form to the treatment provider and to the employer before filing with the BWC. The report could be a carbonless copy form with page one going directly to the BWC, page two to the medical provider and page three to the employer. Pages two and three could be duplicates of page one — with pages color coded and marked "for the BWC," "for your employer" and "for your medical provider." Other solutions are readily discernible.
Applying our interpretation of R.C. 4123.84 to the facts of Dr. Arline's case, we sustain the sole assignment of error. We vacate the judgment of the trial court and remand the case to the trial court with instructions to remand the case to the commission to enter a finding that Dr. Arline has complied with R.C. 4123.84 and for further appropriate proceedings to determine if she has a right to participate in the workers' compensation fund.
Judgment vacated and cause remanded with instructions.
KENNEDY, J., concurs, BRYANT, J., dissents.